UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
JOEY ZURCHIN,                              :
                                           :    Case No.: _____
           Plaintiff,                      :
                                           :    **COMPLAINT**
   -against-                               :
                                           :    **DEMAND FOR JURY TRIAL**
KLX ENERGY SERVICES HOLDINGS,              :
INC., JOHN T. COLLINS, AMIN J.             :
KHOURY, THOMAS P. MCCAFFREY,               :
RICHARD G. HAMERMESH, BENJAMIN A.          :
HARDESTY, STEPHEN M. WARD JR.,             :
THEODORE L. WEISE, and JOHN T.             :
WHATES,                                    :
           Defendants.                     :
----------------------------------------- X

      Plaintiff, Joey Zurchin ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

      1.      This is an action brought by Plaintiff against KLX Energy Services Holdings, Inc. ("KLXE" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with KLXE, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between KLXE and Quintana Energy Services Inc. ("Quintana"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

      2.      On May 3, 2020, KLXE entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Quintana shareholders will receive 0.4844 shares of

KLXE common stock exchange for each Quintana share they own (the "Merger Consideration").

3. On June 18, 2020, in order to convince KLXE shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/prospectus (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of candor/disclosure.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for KLXE, Quintana, and the pro forma combined company; and (ii) the valuation analyses performed by KLXE's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of its fairness opinion.

5. The special meeting of KLXE shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to KLXE's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

//

//

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, KLXE's common stock trades on Nasdaq stock exchange, which is headquartered in this District, KLXE hired Goldman Sachs as a financial advisor, Freshfields Bruckhaus Deringer US LLP as a legal advisor, and Georgeson LLC as a proxy solicitor for the purposes of the Proposed Merger, all of which are also located in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of KLXE common stock.

12.     Defendant KLXE is a provider of completion, intervention and production services and products to the major onshore oil and gas producing regions of the United States. KLXE is incorporated under the laws of Delaware. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "KLXE".

13.     Individual Defendant John T. Collins is, and has been at all relevant times, a director of KLXE.

14.     Individual Defendant Amin J. Khoury is, and has been at all relevant times, a director of KLXE.

15.     Individual Defendant Thomas P. Mccaffrey is, and has been at all relevant times, a director of KLXE.

16.     Individual Defendant Richard G. Hamermesh is, and has been at all relevant times, a director of KLXE.

17.     Individual Defendant Benjamin A. Hardesty is, and has been at all relevant times, a director of KLXE.

18.     Individual Defendant Stephen M. Ward Jr. is, and has been at all relevant times, a director of KLXE.

19.     Individual Defendant Theodore L. Weise is, and has been at all relevant times, a director of KLXE.

20.     Individual Defendant John T. Whates is, and has been at all relevant times, a director of KLXE.

21.     The defendants referred to in ¶¶ 13-20 are collectively referred to herein as the

"Individual Defendants" and/or the "Board", and together with KLXE as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.   Background and the Proposed Merger**

22.     KLXE provides products and services to onshore oil and gas producing regions of the United States. The Company operates in three segments determined on a geographic basis: the Southwest Region (the Permian Basin and Eagle Ford Shale), the Rocky Mountains Region (the Bakken formation, Williston, DJ, Uinta and Piceance Basins and Niobrara Shale) and the Northeast Region (the Marcellus and Utica Shales as well as the Mid-Continent STACK and SCOOP and Haynesville). The Company offers a range of differentiated, complementary technical services and related tools and equipment. The Company serve range of companies engaged in the exploration and development of North American onshore conventional and unconventional oil and natural gas reserves.

23.     Quintana is a provider of oilfield services to onshore oil and natural gas throughout the United States. The Company's business segments include Directional Drilling Services, Pressure Pumping Services, Pressure Control Services, and Wireline Services. The Directional Drilling Services enable efficient drilling and guidance of the horizontal section of a wellbore are using its technologically-advanced fleet of downhole motors and 117 MWD kits. The Pressure Pumping Services, which includes hydraulic fracturing, cementing and acidizing services, and such services are supported by a pressure pumping fleet of 236,125 HHP. The Wireline Servicesincludes 50 wireline units providing a range of pump-down services in support of unconventional completions, and cased-hole wireline services enabling reservoir characterization.

24.     On May 3, 2020, KLXE and Quintana issued a joint press release announcing the Proposed Merger, which states in relevant part:

**KLX ENERGY SERVICES AND QUINTANA ENERGY SERVICES TO COMBINE IN AN ALL-STOCK MERGER, ESTABLISHING AN INDUSTRY-LEADING PROVIDER OF ASSET-LIGHT OILFIELD SOLUTIONS ACROSS THE FULL WELL LIFECYCLE INCLUDING DRILLING, COMPLETION AND PRODUCTION RELATED PRODUCTS AND SERVICES**

**Transaction Highlights**

· Highly complementary product and service offerings across all major US oil and gas basins provide for increased scale to serve a blue-chip customer base
· Accretive to free cash flow per share within 12 months of closing
· Significant annualized cost synergies of at least $40 million, achievable within twelve months
· Joins two strong company cultures comprised of highly-talented teams with shared commitments to safety, performance, customer service and profitability
· Combined company to retain the KLXE name and ticker while the corporate headquarters will move to Houston, TX
· QES executive team, including President and CEO Chris Baker along with EVP and CFO Keefer Lehner will remain in those roles with the combined company
· Nine member Board of Directors, comprising five from the KLXE Board, including John Collins as Chairman, and four from the QES Board
· Enhances combined company's ability to effect further industry consolidation

**Wellington, Florida and Houston, Texas – May 3, 2020** – KLX Energy Services Holdings, Inc. ("KLXE") (NASDAQ: KLXE) and Quintana Energy Services, Inc. ("QES") (NYSE: QES) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger transaction. The combined company will have an industry-leading, asset-light product and service offering present in all major US onshore oil and gas basins, with more than $1 billion of pro forma fiscal year 2019 revenue and approximately $106 million in fiscal year 2019 adjusted EBITDA, excluding an estimated $40 million of annualized cost synergies and a strong liquidity profile with approximately $118 million of cash1 and a $100 million revolving credit facility.

Under the terms of the Merger Agreement, which has been unanimously approved by the Boards of Directors of both companies, QES shareholders will receive 0.4844 shares of KLXE common stock for each share of QES common stock (the "Exchange Ratio"). Upon closing, KLXE and QES shareholders will, respectively, own approximately 59% and 41% of the equity of the combined company on a fully diluted basis. The combined company will retain the KLX Energy Services corporate name, the listing will remain on Nasdaq under the ticker "KLXE" and the corporate headquarters will be moved to Houston, Texas.

Tom McCaffrey, President and CEO of KLXE, said, "QES will add directional drilling, snubbing and well control services to KLXE's already broad range of product and service lines ("PSLs"). We will be rationalizing two of the largest fleets of coiled tubing and wireline assets, which will dramatically reduce future capital spending requirements and which will facilitate the pull-through of KLXE's asset-light products and services. As QES has previously announced the idling of its capital-intensive frac business, we intend to repurpose the vast majority of the pressure pumping equipment to support what will become the largest fleet of large diameter coiled tubing assets in North America. Additionally, we will repurpose some of the pressure pumping equipment to support the wireline fleet, which will also be one of the largest in the US, and one of the largest independent providers of directional drilling services.

"KLXE has successfully demonstrated that the provision of coiled tubing services along with KLXE's broad range of asset-light products and services results in the addition of new customers as well as the capture of a greater share of customer spend. Fundamentally, this transaction allows the combined company to pursue what we know to be a successful, returns (ROIC)-focused strategy, while positioning the combined company to weather the current storm and ultimately, to grow on a significantly-reduced capital expenditure budget.

"We expect this transaction will also generate significant annualized cost synergies of at least $40 million within 12 months, which include substantial savings from the closure of KLXE's corporate headquarters in Wellington, Florida and the combination of both companies' Houston headquarters. In addition, KLXE's broad range of intervention services assures the combined company will be on the front end of the recovery," concluded McCaffrey.

John Collins, Chairman of the Board of KLXE, added, "It is our view that consolidation in the oilfield services industry is essential to remain cost-competitive in an environment where oil prices and demand may be depressed for an extended period. Our complementary operations and cultures and our shared commitment to customer satisfaction will provide us with an enhanced ability to serve our customers and to create value for shareholders."

Corbin J Robertson Jr., Chairman of the Board of QES, added, "We are pleased to announce the combination of these two strong companies and the resulting creation of a leading US onshore oilfield services company. We look forward to working with the KLXE Board and team, and we are excited about the value creation potential for all stakeholders."

Christopher J. Baker, President and CEO of QES, added, "We believe this combination affords us a first-mover advantage and positions the combined company not only to weather the current market dislocation but also to provide an industry-leading product and service offering across, and drilling solutions to, our blue-chip customer base. We are enthusiastic about the many financial and strategic

7

merits of this merger, including the combined company's leading positions in many of its PSLs. This broadened suite of solutions will be extremely attractive to our customers who are all seeking to consolidate purchasing with trusted, high-quality service providers. Additionally, we believe that our downhole motor technology, vertical integration and in-house machining capacity within QES's drilling segment will serve to reduce KLXE's downhole tool costs and will allow for cross-pollination of motor and tool technologies to provide best-in-class reliability and performance.

"The QES team and I look forward to combining with the team at KLXE. We share a strong culture of operational excellence and customer satisfaction, which will position us to generate long-term shareholder value," concluded Baker.

**Compelling Strategic and Financial Benefits**

· Establishes A Leader Across Key PSLs and Improves Business Mix: The transaction creates a premier provider of production, completion and drilling solutions. The combined company will have substantial scale as the foremost US provider of large-diameter coiled tubing services with 24 large-diameter coiled tubing spreads and will operate one of the largest US wireline fleets with more than 130 wireline units. KLXE's completion and production service offering will be augmented by the addition of QES's 36 rig-assisted snubbing units. QES also contributes its industry-leading directional drilling franchise with 117 measurement while drilling (MWD) kits. The opportunity to leverage these service lines and combined proprietary technologies across a broad customer base in multiple geographic basins allows for greater ability to service customer needs, and is expected to result in significant market share gains.
· Drives Visible Cost Synergies: The combined company expects to generate annualized cost synergies in excess of $40 million within 12 months. Synergy opportunities exist through rationalizing KLXE's corporate headquarters in Wellington, Florida, combining KLXE and QES Houston-area locations, consolidating redundant facilities in key basins and reducing field expenses.
· Generates Opportunities for Commercial Synergies Via Pull-Through of Asset-Light Products and Services: The improved scale of the combined company's coiled tubing fleet will help advance KLXE's strategy of pulling through asset-light products and services by tapping into a broader customer base and gaining increased share of customer spend. Additionally, the vertical integration and in-house machining capacity within QES' drilling segment will help to reduce KLXE's tool costs and will allow for cross-pollination of motor and tool technologies to provide best-in-class reliability and performance.
· Strengthens Balance Sheet and Financial Position: Pro forma as of January 31, 2020, the combined company will be well-capitalized with approximately $118 million in cash, a $100 million undrawn revolving credit facility and pro forma leverage of approximately 1.3x net debt to full year 2019 adjusted EBITDA. Further, the anticipated $40 million plus of annualized cost synergies enhances the cash flow profile of the combined company.

· Reinforces Platform for Future Consolidation: As a result of the increased scale, improved balance sheet, and liquid public currency, the combined company will be well-positioned to continue the pursuit of additional value-creating consolidation opportunities within the oilfield service industry. We will continue to focus on asset-light oilfield product and service lines as we maintain our returns (ROIC)-driven approach.

**Leadership, Governance and Headquarters**

Both KLXE and QES contribute highly experienced management teams with a significant track record of success. Chris Baker, President and CEO of QES, will be President and CEO. Tom McCaffrey, President and CEO of KLXE, will be a member of the Board of Directors of the combined company and will be Chairman the Integration Committee of the Board. Keefer Lehner, EVP and Chief Financial Officer of QES, will be EVP and Chief Financial Officer.

Upon closing of the transaction, the combined company's Board of Directors will consist of nine directors, five of whom will be from the legacy KLXE Board, including John Collins as Chairman, and four of whom will be from the legacy QES Board.

The combined company's corporate headquarters will be moved to Houston, Texas.

**Approvals and Closing**

The transaction has been unanimously approved by the Boards of Directors of both KLXE and QES. The merger is expected to close in the second half of 2020, following KLXE and QES shareholder approval and satisfaction of other customary closing conditions.

Archer Well Company Inc., Quintana Capital Group, L.P., Geveran Investments Limited and Robertson QES Investment LLC own approximately 75 percent of the outstanding shares of QES and have entered into a voting and support agreement to vote their shares in favor of the transaction.

25. The Merger Consideration is excessive and represents inadequate value for KLXE shares in the post-merger combined company. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

//

## II. The Proxy Omits Material Information

26. On June 18, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

<u>The Misleadingly Incomplete Financial Projections</u>

27. First, the Proxy omits critical financial projections, including the net income projections for both KLXE and Quintana (the "Net Income Projections"), the entire KLXE Pro Forma 2020 Recovery Forecasts utilized by Goldman Sachs in performing its financial analyses (the "Pro Forma Projections"), and the tax benefits to KLXE pro forma for the merger, as prepared by the management of KLXE and approved for Goldman Sachs' use by KLXE (the "Tax Benefit Estimates" and together with the Net Income Projections and the Pro Forma Projections, the "Omitted Projections"). Defendants elected to summarize multiple sets of financial projections, but they excised and failed to disclose the Omitted Projections. By disclosing certain projections in the Proxy and withholding the Omitted Projections, Defendants render the tables of projections on pages 108-109 an 112-113 of the Proxy materially incomplete and provide a misleading valuation picture of KLXE, Quintana, and the post-merger combined company. Simply put, net income and pro forma projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

28. The Omitted Projections are critical information to shareholders and strike at the

central question asked by the solicitation: is the smaller stake in the combined company worth more or less than the full stake in the standalone? Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Goldman Sachs and the Board but have omitted the Net Income Projections, the Pro Forma Projections, and the Tax Benefit Estimates. These omissions render the summary of the projections tables and the each company's financial picture in the Proxy misleadingly incomplete.

<u>The Misleadingly Incomplete Summary of Goldman Sachs' Fairness Opinion</u>

29. Second, the Proxy describes Goldman Sachs' fairness opinion and the various valuation analyses performed in support of their opinion. Defendants concede the materiality of this information in citing Goldman Sachs' fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to KLXE shareholders. Proxy at 100; *see also* Proxy at 115 ("The following is a summary of the material financial analyses delivered by Goldman Sachs to the KLXE Board in connection with rendering the opinion described above."). However, the summary of Goldman Sachs' fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses—and potentially entire analyses. Without this information, as described below, KLXE shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any,

to place on Goldman Sachs' fairness opinion in determining how to vote on the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to KLXE's shareholders.

30. In summarizing the *Discounted Cash Flow Analyses* prepared by Goldman Sachs, the Proxy fails to disclose the following key information used in the analyses: (i) unlevered free cash flow for KLXE for the years 2020 to 2023; (ii) unlevered free cash flow for the combined company for the years 2020 to 2023 as reflected in the KLXE Pro Forma 2020 Recovery Forecasts and taking into account the Synergies; (iii) net present value of KLXE's future tax benefits; (iv) the net debt of KLXE as of January 31, 2020; (v) he net debt of the combined company as of January 31, 2020; (vi) the inputs and assumptions underlying the discount rate ranges (including the values of the company-specific WACC/CAPM components); and (iii) the actual terminal values calculated for each analysis.

31. These key inputs are material to KLXE shareholders, and their omission renders the summary of the *Discounted Cash Flow Analyses* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult

>to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

32. Without the above-omitted information, particularly the unlevered free cash flows, KLXE shareholders are misled as to the reasonableness or reliability of Goldman Sachs' analyses, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Discounted Cash Flow Analyses* included in the Proxy misleadingly incomplete.

33. Additionally, page 114 of the Proxy states that Goldman Sachs compared certain financial and stock market information for KLXE and QES with similar information for certain other companies the securities of which are publicly traded. Yet the Proxy fails to disclose and selected companies or selected transactions analysis or an explanation for its failure to do so. To the contrary, the Proxy plainly discloses the *Selected Publicly Traded Company Analysis and the Selected Transaction Analysis* performed by Quintana's financial advisor. See Proxy at 123-124. The Proxy further states that "[i]n arriving at its fairness determination, Goldman Sachs considered the results of all of its analyses and did not attribute any particular weight to any factor or analysis considered by it. Rather, Goldman Sachs made its determination as to fairness on the basis of its experience and professional judgment after considering the results of all of its analyses." Proxy at 117. Yet the only financial analyses disclosed are the *Discounted Cash Flow Analyses* and the Proxy prevents shareholders from considering the results of all of Goldman Sachs' analyses. Accordingly, the omission of these analyses renders the purported summary provided in the Proxy

misleadingly incomplete.

34. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. The omission of information from a proxy will violate Section 14(a) if other SEC

regulations specifically require disclosure of the omitted information.

39. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for KLXE, Quintana, and the pro forma combined company; and (ii) the valuation analyses performed by Goldman Sachs in support of its fairness opinion.

40. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

41. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Goldman Sachs reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Goldman Sachs, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy

to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Goldman Sachs' analyses in connection with their receipt of the fairness opinion, question Goldman Sachs as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

43. KLXE is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

44. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of KLXE's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
## Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of KLXE within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

49. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT III
### Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of care, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

55. As alleged herein, the Individual Defendants breached their duty of care by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

56. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of KLXE shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 18, 2020                                **MONTEVERDE & ASSOCIATES PC**

  */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*